IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § | |
| Plaintiff, § § | |
| v. § § § | Case No.: CIV-22-673-F |
| GRENECO, LLC, § GENE D. LARSON, § GREGORY K. WOMACK, and § WOMACK INVESTMENT ADVISERS, INC. § § | |
| Defendants. § § | |

# COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants GreneCo, LLC ("GreneCo"), Gene D. Larson ("Larson"), Gregory K. Womack ("Womack") and Womack Investment Advisers, Inc. ("WIA") (collectively, "Defendants"), and respectfully shows the Court as follows:

## SUMMARY

1. From late 2017 through December 2018, GreneCo, Larson, and Womack raised approximately $23.3 million from more than 250 investors in four unregistered securities offerings ("GreneCo Offerings") involving purported real estate investment opportunities. Each offering included three investment options, but GreneCo's marketing focused on a specific option that provided for the creation of charitable tax deductions through a conservation easement strategy. Under Section 170(h)(3) of the Internal Revenue Code, conveying a conservation easement or donating property to an entity

organized under Section 501(c)(3) of the Internal Revenue Code may result in federal and state charitable tax deductions for an investor (the tax payer).

2.  Larson and Womack co-owned and co-managed GreneCo. Larson was primarily responsible for identifying real estate development opportunities. Womack was primarily responsible for identifying potential investors. The Defendants solicited investors to purchase membership units in limited liability companies that would be managed by GreneCo. The membership units were securities, but the Defendants failed to register their offerings with the Commission and no registration exemption applied.

3.  In addition, Womack was the owner and control person of WIA, a state-registered investment adviser, and he recommended one or more of the GreneCo offerings to WIA clients. In doing so, he failed to inform those clients that he would receive millions of dollars in management fees from investor funds through the GreneCo Offerings, including his portion of $472,698 attributable to eight WIA investor clients. He and WIA also failed to inform WIA clients that WIA received at least $160,000 directly from GreneCo as a result of the GreneCo offerings. Instead, WIA filed Part 2B of its annual Form ADV (WIA ADV) on March 9, 2018, which misleadingly represented that "WIA receives no compensation from a client's participation and does not charge the client a fee for this investment." Both Womack and WIA had an affirmative fiduciary duty to fully and fairly disclose the management fees paid to Womack and the compensation paid to WIA from GreneCo.

4.  As a result of this conduct, GreneCo, Larson, and Womack each violated Sections 5(a) and 5 (c) of the Securities Act of 1933 ("Securities Act"), and Womack and

WIA each violated Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

## JURISDICTION AND VENUE

5.  The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

6.  The Court has jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 214(a) the Advisers Act [15 U.S.C. § 80b-14(a)].  Venue is proper in this District because: (a) a substantial part of the events giving rise to the claims occurred in the Western District of Oklahoma, (b) the proposed Defendants live or conduct business in this District, and (c) a number of the investors reside in this District.

7.  The membership units sold in this case are investment contracts and, therefore, securities, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b].

8.  In connection with the conduct described herein, GreneCo, Larson, Womack, and WIA directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce.

## PARTIES

9.  Plaintiff is an agency of the United States government.

10.  GreneCo, LLC, is an Oklahoma limited liability company ("LLC") headquartered in Edmond, Oklahoma.  Prior to July 2019, Gregory Womack and Gene Larson each owned 50% of GreneCo and were the co-managers of GreneCo.  GreneCo was

the manager of several real estate investment projects, each one a separately formed company.

11.     Gene D. Larson, age 78, is a resident of Mesa, Arizona and Edmond, Oklahoma.  He was the co-owner and co-manager of GreneCo.

12.     Gregory K. Womack, age 58, is a resident of Edmond, Oklahoma.  He was the co-owner and co-manager of GreneCo.  Womack currently holds a FINRA Series 65 license and is a licensed investment adviser in five states.  Since at least 2000, Womack has been an investment adviser, control person, and sole owner of WIA.  Womack's involvement with GreneCo was disclosed as other business activity in Part 2B of the WIA ADV.

13.     Womack Investment Advisers, Inc., is an Oklahoma corporation, with a principal place of business in Edmond, Oklahoma.  WIA is registered as an investment adviser in Oklahoma, and in its most recent Form ADV listed approximately $70 million in assets under management.

## RELATED ENTITIES

14.     Doc's Field of Dreams, LLC ("DFOD"), an Oklahoma LLC, is a real estate investment firm managed by GreneCo.  Between October 20, 2017 and December 28, 2018, DFOD raised $10.4 million from 109 investors.

15.     The Orchard at Turtle Creek, LLC ("Turtle Creek"), an Oklahoma LLC, was a real estate investment firm.  Due to a last minute issue closing on the real property intended for investment by Turtle Creek, GreneCo unilaterally transferred all investors to the DFOD investment.  Between November 1, 2017 and December 22, 2017, Turtle Creek

raised $2.3 million from 25 investors, which was ultimately included in the DFOD figures cited above. Turtle Creek has no current operations.

16. Sweetwater Cove Partners, LLC ("Sweetwater"), an Oklahoma LLC, is a real estate investment firm managed by GreneCo. Between October 10, 2018 and December 6, 2018, Sweetwater raised $4.7 million from 51 investors.

17. Buck Mountain Resort LLC ("Buck Mountain"), an Oklahoma LLC, is a real estate investment firm managed by GreneCo. Between November 21, 2018 and December 26, 2018, Buck Mountain raised $8.2 million from 117 investors.

## THE DEFENDANTS' MISCONDUCT

### A. The GreneCo Offerings were not registered

18. From October 2017 through December 2018, GreneCo, Larson, and Womack raised money from investors to fund four real estate investment projects: (1) DFOD; (2) Turtle Creek; (3) Sweetwater; and (4) Buck Mountain. GreneCo, Larson, and Womack offered and sold membership units in the respective limited liability company for each project (DFOD, Turtle Creek, Sweetwater, or Buck Mountain) and GreneCo managed each limited liability company. In each respective offering, investors expected to derive profits solely from the efforts of GreneCo, Larson, and Womack. Accordingly, the membership units offered and sold in the GreneCo Offerings were securities under the federal securities laws.

19. GreneCo, Larson, and Womack solicited investors across the United States for the GreneCo Offerings over a two-month period for each offering. GreneCo identified investors primarily through three sources: (1) consulting agreements with outside firms

who referred potential investors; (2) a network of certified public accountants ("CPAs") who referred their clients to GreneCo to learn more about the investment opportunities; and (3) a subset of investors to whom Womack personally recommended investing in the GreneCo Offerings, including eight WIA clients.

20.     In addition, Womack often hosted educational dinners in Edmond, Oklahoma.  During the dinners, Womack and Larson presented their strategies on land conservations and charitable easements, answered questions from potential investors, and explained the benefits of these investments.  GreneCo recruited investors for these dinners by email, which included language in the subject line such as, "2018 Conservation Easement Project Now Available!"

21.     Womack and Larson drafted and provided investors with an executive summary for each GreneCo Offering.  There were no other written materials describing the investments.

22.     The executive summaries presented investors with a choice of options for their investments.  Option 1 involved a plan to develop and market the property for sale, which varied from an oil storage facility (DFOD), a multi-story office building (Turtle Creek), condominiums (Sweetwater), and cabin-style homes (Buck Mountain).  The GreneCo Offerings sought to raise enough investor funds to cover just the initial construction costs associated with Option 1, typically between 12-20% of the total projected construction costs.  Option 2 involved acquiring and holding each property, based on its current zoning, in order to generate long-term investment gains.  Option 3 identified

a strategy of conveying a conservation easement to a qualified organization, under Section 170(h)(3) of the Internal Revenue Code, to receive a charitable tax deduction.

23. The executive summaries explained that Option 3's value of the return on investment (i.e., the tax deduction that would result from the creation of a conversation easement) was determined based upon a report prepared by an independent appraiser. Specifically, Womack and Larson represented that the prospective return on investment was based on the profit the appraiser estimated would be obtained if the property had been developed as outlined in Option 1. Essentially, Option 3 ascribed the same value as Option 1, upon which investors could obtain the same benefit as Option 1 as a tax deduction, but without any of the associated development risks or additional costs. Under Option 3, investors relied on GreneCo, Larson, and Womack, and their key consultants to identify the projects, negotiate the purchase price of the land, setup the corporate structure for the acquisition of the land and administrative expenditures, satisfy the IRS's requirement for conservation easements, and, importantly, hold reserves in an entity bank account for possible tax audit defenses.

24. Upon deciding to invest in one of the GreneCo Offerings, the investor and GreneCo signed an "Acknowledgment of Investment," where the investor indicated the number of membership units he or she desired to purchase. For two of the GreneCo Offerings, GreneCo provided its investors with a check-the-box "Suitability Questionnaire," asking investors to self-attest to their accreditation status, but it did nothing to verify the status and/or information provided by the investors. GreneCo took no steps to identify whether investors were accredited in the remaining offerings.

25. At no time did GreneCo, Larson, or Womack register any of the GreneCo Offerings with the Commission, and no exemption from the registration requirements applied to the GreneCo Offerings. Through the GreneCo Offerings, GreneCo, Larson, and Womack sold membership units of approximately $10.4 million in DFOF and Turtle Creek, $4.7 million in Sweetwater, and $8.2 million in Buck Mountain.

B. **Womack Failed to Disclose his Management Fees to WIA Client-Investors**

26. The executive summaries distributed to investors, including WIA clients, provided no information regarding the use of investor funds if Option 2 or Option 3 was selected, and they failed to disclose the management fees that GreneCo received under Option 3. Womack and Larson split the GreneCo management fees equally. Shortly after the closing of each GreneCo Offering, GreneCo submitted an invoice to the respective offering entity seeking the management fees. Womack and Larson then approved the invoice, internally transferred investor funds to GreneCo's bank account, and further transferred the funds to their personal bank accounts.

27. Eight WIA clients collectively invested $1,064,500 in the GreneCo Offerings. Womack, in his roles as co-manager and co-owner of GreneCo, drafted and approved the executive summaries for each of the GreneCo Offerings. However, the executive summaries failed to disclose the management fees that Womack received. Womack also failed to disclose his receipt of management fees in other communications with his WIA client-investors when recommending the investments.

28. Although the GreneCo Offerings listed the amount of capital needed to develop the properties under Option 1, the executive summaries did not provide any discussion regarding the use of funds in each GreneCo Offering. In addition, Womack did not provide documents to WIA client-investors that disclosed--or otherwise informed those clients--that the GreneCo Offerings would result in management fees that flowed directly to Womack. Specifically, Womack failed to disclose that GreneCo received: 28.7% of investor funds as management fees for DFOD (and Turtle Creek); 51.4% of investor funds for Sweetwater; and 74.3% of investor funds for Buck Mountain. Womack split the $11.5 million in total management fees equally with Larson, which included funds that came directly from WIA client-investors.

29. Further, the executive summaries did not disclose that if WIA clients selected Option 3, which required a significantly lower amount of capital than Option 1 to develop the property, the excess capital would be paid to Womack and Larson as management fees.

30. Collectively, the WIA client-investors paid $472,698 in management fees to GreneCo. Ultimately 50% of the fees ($236,349) went directly to Womack, and as an investment adviser, he had a fiduciary duty to disclose this material fact to his WIA client-investors.

**C.  WIA Filed a Misleading Form ADV**

31. As a state-registered investment adviser, WIA prepared an annual disclosure on Form ADV ("WIA ADV"). On or about March 9, 2018, WIA filed Part 2B of the WIA ADV, which identified Womack as a member of GreneCo. Further, the WIA ADV disclosed that, "GreneCo, LLC can receive compensation directly from the land

owners/managing firms, which sponsor such programs; however, WIA receives no compensation from a client's participation and does not charge the client a fee for this investment." This disclosure was materially misleading.

32. WIA received a total of $160,000 from GreneCo sourced by investor funds in the GreneCo Offerings. On or about December 28, 2017, WIA invoiced GreneCo for $60,000 related to DFOD. On or about December 12, 2018, WIA invoiced GreneCo for $50,000 related to Buck Mountain. On or about December 12, 2018, WIA invoiced GreneCo for $50,000 related to Sweetwater. These invoices were paid with investor funds, including from the WIA client-investors, in direct contradiction to the WIA ADV.

33. As the owner of WIA, Womack had sole authority over the invoices prepared by WIA and submitted to GreneCo. And, as the co-manager of GreneCo, Womack was responsible for approving the invoices, and he knew that the funds used to pay the invoices came directly from investor funds, including from WIA client-investors. WIA had an affirmative duty not to mislead its clients in the WIA ADV about compensation it received from the GreneCo Offerings, which was directly tied to investor funds including the WIA client-investors.

## FIRST CLAIM FOR RELIEF

### Violations of Section 5(a) and 5(c) of the Securities Act

34. The Commission repeats and re-alleges Paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. By engaging in the acts and conduct alleged in this Complaint, GreneCo, Larson and Womack, directly or indirectly, made use of the means or instruments of

transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities, when no registration statement was in effect with the Commission as to such securities, and made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, such securities when no registration statement had been filed with the Commission as to such securities.

36. There were no applicable exemptions from registration.

37. By reason of the foregoing, GreneCo, Larson and Womack violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, [15 U.S.C. § 77e].

## SECOND CLAIM FOR RELIEF

**Violations of Section 206(2) of the Advisers Act**

38. The Commission repeats and re-alleges Paragraphs 1 through 33 of the Complaint as if fully set forth herein.

39. By engaging in the acts and conduct alleged in this Complaint, Womack and WIA, acting as investment advisers, by use of the mails or any means or instrumentality of interstate commerce, directly and indirectly, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective client.

40. By reason of the foregoing, Womack and WIA violated, and, unless enjoined, are reasonably likely to continue to violate, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

1. Permanently restraining and enjoining Defendants GreneCo, Larson, and Womack from violating Sections 5(a) and 5(c) of the Exchange Act [15 U.S.C. § 77e(a) and e(c)];

2. Permanently restraining and enjoining Defendants Womack and WIA from violating Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)];

3. Ordering Defendants Womack and WIA to disgorge ill-gotten gains obtained as a result of the violations alleged herein, plus prejudgment interest on those amounts;

4. Ordering Defendants GreneCo, Larson, and Womack to pay civil penalties to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

5. Ordering Defendants Womack and WIA to pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

6. Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

DATED: August 8, 2022                    Respectfully submitted,

                                                       *s/ David B. Reece*
                                                       DAVID B. REECE
Texas Bar No. 24002810
Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, 19th Floor
Fort Worth, Texas 76102-6882
Phone: (817) 978-6476
Fax: (817) 978-2700
reeced@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION